1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Edmund Losa,                                  No. CV-18-04424-PHX-MTL

10                    Plaintiff,                    **ORDER**

11   v.

12   Salt River Project Agricultural
     Improvement and Power District,
13
                     Defendant.
14

15         Plaintiff Edmund Losa alleges four counts of discrimination under 42 U.S.C. § 1981

16   against his former employer, Salt River Project Agricultural Improvement and Power

17   District ("SRP"). This order grants SRP's Motion for Summary Judgment (the "Motion")

18   (Doc. 47).

19   **I.     BACKGROUND FACTS**

20         Mr. Losa was born in the Philippines. For the purposes of national origin, he

21   identifies as Filipino. Mr. Losa is an engineer. He began working for SRP in 2007 as a

22   contract employee and was hired on as a regular employee in 2008. Mr. Losa's initial work

23   position was that of senior distribution engineer. Within a few years, Mr. Losa took on the

24   responsibilities of senior engineer. In that position, Mr. Losa was responsible for

25   reviewing, approving, and modifying electrical distribution plans prepared by SRP

26   designers. His workstation was initially located at a facility in the east side of the greater

27   metro Phoenix area (the "East Valley"). He focused on commercial projects in the East

28   Valley.

1      Beginning in 2012 and lasting through his retirement, Mr. Losa's duty station was

2  at the SRP Crosscut facility. There he worked in a group supervised by Manuel Contreras.

3  Not long after he transferred to the Crosscut location, Mr. Contreras reassigned Mr. Losa

4  to the "West Valley" territory, that is, projects underway in the west side of the greater

5  metro Phoenix area. Mr. Losa's territory was switched with that of William Johnson,

6  another senior engineer in the Contreras group, who had previous responsibility for

7  commercial projects in the West Valley.

8      Sometime in 2012, Mr. Contreras was engaged in a conversation with another SRP

9  employee whose son who was serving a church mission in the Philippines. The

10  conversation was overhead by Mr. Losa. According to Mr. Losa, Mr. Contreras told the

11  fellow employee something along the lines of Filipinos eat dog meat. Mr. Losa found this

12  comment offensive and reported it to the human resources department.

13      In 2016, Mr. Contreras ordered a project assignment rotation among his team

14  members. Now, Mr. Losa was assigned to residential projects in the West Valley. Mr.

15  Johnson was assigned to municipal projects. Another senior engineer was assigned to West

16  Valley commercial projects and another to commercial projects in the East Valley. It is Mr.

17  Losa's opinion that residential projects are less technical or prestigious than commercial

18  projects. He contends that the objective of this workforce rotation was to retaliate against

19  him for reporting the Filipino comment to human resources four years earlier.

20      Sometime in 2017, Mr. Losa submitted another complaint to the human resources

21  department. This involved an incident where one of his co-workers, Dave McIntire,

22  "barged" into his workspace and "pushed him on his back" and, in a loud voice, "ask[ed]

23  him a work-related question." Mr. Losa also reported that Mr. McIntire embarrassed him

24  in group meetings. Mr. Losa told human resources that Mr. McIntire's behavior toward

25  him was based on him being Filipino. According to the human resources representative,

26  when he was asked to substantiate this accusation, Mr. Losa said that it was "just a feeling"

27  that he had. He also told the representative that he was unaware of Mr. McIntire making

28  statements about Mr. Losa's nationality or Filipinos in general.

- 2 -

1    Mr. Losa also reported to human resources an incident where Mr. McIntire

2  forcefully bumped into him as the two passed each other in a hallway. Again, Mr. Losa

3  told human resources that Mr. McIntire did this because of his national origin. When he

4  was asked in his deposition to explain this conclusion, Mr. Losa testified that it is based on

5  "circumstantial evidence." He was asked, "[b]y that do you mean just because you are

6  Filipino and he did it to you, that's because you were a Filipino?" Mr. Losa answered,

7  "[y]es."

8    Another event in 2017 involved SRP undergoing a company-wide restructuring.

9  Employees at many levels, including managers and supervisors, were rotated within the

10  organizational structure. Mr. Losa contends that SRP underwent this restructuring to

11  retaliate against him for making his human resources complaints.

12    Sometime in 2017, SRP placed Mr. Losa on a development plan. SRP contends that

13  it was not a disciplinary measure but was, instead, designed to "improve his

14  communications and interactions with the other engineers within his work group."  Mr.

15  Losa contends that the development plan was retaliatory because imposing a development

16  plan is a more severe measure than warranted under the circumstances. He also contends

17  that he risked termination for violating the development plan.

18    In March 2018, Mr. Losa was walking through the Crosscut facility's parking lot

19  when he was nearly hit by a carpool van. Mr. Losa was in the crosswalk that leads from

20  the parking lot, across a driveway, and into the building. Mr. Contreras was driving the

21  van. It passed through the crosswalk as Mr. Losa was in it, narrowly missing him. Mr. Losa

22  reported this to Mr. Contreras's supervisor. SRP blames the incident on a poorly configured

23  crosswalk. Mr. Losa contends that Mr. Contreras intended to harass him.

24    Since relocating to the Crosscut facility in 2012, Mr. Losa was expected to work

25  about one day each week at the East Valley facility. That office maintained a cubicle for

26  visiting engineers. The cubicle was nameplated "engineer." Mr. Losa used that cubicle

27  during his visits. One day, in October 2018, Mr. Losa arrived for work in the East Valley

28  and found the cubicle reassigned for a "land agent." He brought this to the attention of the

1   human resources representative, alleging that it was another retaliatory incident. SRP

2   asserts that the workspace was reassigned because it was needed for other employees. At

3   his deposition, Mr. Losa was asked the following question: "So is it, then, the fact that you

4   are Filipino and he did it to you [re-assigning the cubicle], therefore, he must have done it

5   because you are Filipino?" He responded, "[y]es, sir."

6          Mr. Contreras's senior engineering team was set for another rotation of assignments

7   to take place in January 2019. Mr. Losa would have been rotated back into commercial

8   project review. This fell short of happening, however, because Mr. Losa gave notice of his

9   retirement on December 10, 2018, effective on December 27, 2018.

10  **II.     PROCEDURAL HISTORY**

11         Mr. Losa filed his Complaint in December 2018 asserting three § 1981 claims for

12  relief against SRP. (Doc. 1.) A few months later, in April 2019, he amended his Complaint

13  to add an additional two claims under § 1981. (Doc. 30.) In November 2019, upon the

14  stipulation of the parties, the Court dismissed one of the claims. (Docs. 45, 46.) Soon

15  thereafter, SRP filed its Motion and Separate Statement of Facts. (Docs. 47, 48.) Mr. Losa

16  filed a Response and a Controverting Statement of Facts. (Doc. 50, 51.)  The Motion is

17  now fully briefed. (Doc. 53.) Oral argument was held on July 1, 2020.

18  **III.    SUMMARY JUDGMENT STANDARD**

19         Summary judgment is appropriate if the evidence, viewed in the light most favorable

20  to the nonmoving party, demonstrates "that there is no genuine dispute as to any material

21  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A

22  genuine issue of material fact exists if "the evidence is such that a reasonable jury could

23  return a verdict for the nonmoving party," and material facts are those "that might affect

24  the outcome of the suit under the governing law . . . ."  *Anderson v. Liberty Lobby, Inc.*,

25  477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-

26  movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at

27  255 (internal citations omitted); *see also Jesinger v. Nevada Fed. Credit Union*, 24 F.3d

28  1127, 1131 (9th Cir. 1994) (court determines whether there is a genuine issue for trial but

1   does not weigh the evidence or determine the truth of matters asserted).

2   **IV.   DISCUSSION**

3          Section 1981 "protect[s] from discrimination identifiable classes of persons who are

4   subjected to intentional discrimination solely because of their ancestry or ethnic

5   characteristics." *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1073 (9th Cir. 2005) (quoting *St.*

6   *Francis Coll. v. Al-Kahazraji*, 481 U.S. 604, 613 (1987)). This includes protection against

7   workplace racial discrimination, which is also referred to as hostile work environment or

8   racial harassment, and retaliation for reporting racial discrimination. *CBOCS West v.*

9   *Humphries*, 553 U.S. 442, 446 (2008) (holding that "§ 1981 encompasses retaliation

10  claims"); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008)

11  ("In this circuit, [racial harassment] claims are cognizable under § 1981."). Mr. Losa's

12  remaining claims for relief include two claims for retaliation and two claims for hostile

13  work environment.[1] The Court will analyze them in turn.

14         **A.     Retaliation**

15         Mr. Losa asserts that SRP retaliated against him for reporting alleged discrimination

16  by "demoting" him (Count Two) and by issuing the development plan (Count Three).[2] To

17  state a prima facie case of retaliation under § 1981, a plaintiff must show that (1) he

18  engaged in a protected activity, (2) he was subjected to an adverse employment action, and

19  (3) "a causal link exists between the protected activity and the adverse action." *Manatt v.*

20  *Bank of Am., NA*, 339 F.3d 792, 800 (9th Cir. 2003); *see also El-Hakem v. BJY Inc.*, 415

21  F.3d 1068, 1073 (9th Cir. 2005) (retaliation claims under § 1981 are evaluated under the

22  same burden-shifting standards as those asserted under Title VII of the Civil Rights Act).

23  If a plaintiff makes the prima facie showing, then "the burden shifts to the defendant to set

24  _____
    [1] Mr. Losa's First Amended Complaint asserts § 1981 claims based on national origin.
25  Section 1981 applies only to race-based discrimination. *See Runyon v. McCrary*, 427 U.S.
    160, 168 (1976). However, while "national origin discrimination is not within the ambit of
26  § 1981, race has been defined broadly to cover immigrant ethnic groups." *Fonseca v. Sysco*
    *Food Servs. of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004). The Court will accordingly
27  analyze Mr. Losa's claims as § 1981 claims based on "race" as through the lens of Mr.
    Losa's Filipino ancestry.
28  [2] Although the First Amended Complaint only identifies an "adverse employment action"
    in Count Three, Mr. Losa's response to the Motion clarifies that the action at issue was the
    2018 issuance of the development plan.

1    forth a legitimate, non-retaliatory reason for its actions." *Manatt*, 339 F.3d at 800. The final

2    step shifts the burden back to the plaintiff to "produce evidence to show that the stated

3    reasons were a pretext for retaliation." *Id*. SRP argues that Mr. Losa has not stated a prima

4    facie case, and that even if he had, he cannot establish that SRP's legitimate justifications

5    were pretext for retaliation. The Court agrees.

6                       **1.      Prima Facie Case**

7           Mr. Losa cannot state a prima facie claim of retaliation under § 1981. First, he has

8    not demonstrated that he was subjected to an adverse employment action. An "adverse

9    employment action" is one based on a retaliatory motive and "reasonably likely to deter

10   the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217

11   F.3d 1234, 1243 (9th Cir. 2000) (citation omitted). Mr. Losa has not demonstrated that his

12   periodic work reassignments meet this standard. He concedes that each time he was

13   reassigned, other engineers were, as well. (Doc. 30 at 4; Doc. 51 at 9 ¶ 26.) Further,

14   although Mr. Losa asserts that his residential and commercial assignments required

15   different skill sets, he "suffered no additional detriment beyond [his] transfer to a new

16   team." *Sillars v. Nevada*, No. 307-CV-00041-LRH-RAM, 2008 WL 4540457, at *9 (D.

17   Nev. Oct. 6, 2008), aff'd, 385 F. App'x 669 (9th Cir. 2010). Mr. Losa also claims that

18   residential assignments were less challenging and prestigious. (Doc. 30 at 4.) This does not

19   establish an adverse employment action, however. *See McKinnon v. Twin Rivers Unified

20   Sch. Dist*., No. 2:14-CV-0450 JAM CKD, 2014 WL 5473244, at *2 (E.D. Cal. Oct. 28,

21   2014) ("Although plaintiff complains that the transfer subjected her to humiliation and loss

22   of prestige, plaintiff's subjective preference for her prior position is insufficient to state a

23   prima facie case for discrimination predicated on her transfer.").

24          Plaintiff has also not demonstrated that SRP's development plan was an adverse

25   employment action. Multiple courts have held that placing an employee on a development

26   plan is not an adverse employment action for retaliation purposes. *See, e.g., James v. C-

27   Tran*, 130 F. App'x 156, 157 (9th Cir. 2005) ("Because the performance improvement plan

28   was non-disciplinary training that did not materially impact [plaintiff's] compensation,

1  terms, conditions, or privileges of employment, it was not an adverse employment

2  action."); *Cozzi v. Cty. of Marin*, 787 F. Supp. 2d 1047, 1061 (N.D. Cal. 2011) ("Written

3  warnings and performance improvement plans are not adverse actions where they do not

4  materially affect the terms and conditions of employment."). Seeing no evidence that Mr.

5  Losa's improvement plan materially impacted his employment, this Court agrees with

6  these prior cases.

7            Second, even if Mr. Losa had demonstrated an adverse employment action, he has

8  also not stated a prima facie case because he has not established the requisite causal link to

9  his protected activity. Plaintiff states that after reporting concerns in 2016, he was

10  "demoted" from commercial work to residential work that same year. (Doc. 50 at 6.) He

11  asserts that a "reasonable inference" is that Mr. Contreras "grew weary" of his complaints

12  and "decided to demote" him. (*Id.*) Further, when asked at his deposition about the basis

13  for his conclusion that his job reassignment was based on race, Mr. Losa responded,

14  "Circumstantial evidence and an email that I was moved, I'm being moved, that's it." (Doc.

15  48-1 at 33-34.) Mr. Losa agreed that by "circumstantial evidence" he meant that because

16  he is Filipino and the reassignment happened to him, "that means it's because [he is] a

17  Filipino." (*Id.* at 39.) Mr. Losa's evidence consists of "mere allegation and speculation."

18  *Nelson v. Pima Community College*, 83 F.3d 1075, 1081 (9th Cir.1996). He has therefore

19  not demonstrated the requisite causal link with respect to his job reassignments.

20            Mr. Losa also argues that SRP placed him on a development plan eight months after

21  he reported a complaint. (Doc. 50 at 6.) He presents no other causal link.[3] Temporal

22  proximity between the protected activity and the adverse employment action "can in some

23  cases, by itself, constitute sufficient circumstantial evidence of retaliation." *Garcia v. City*

24  *of Everett*, 728 F. App'x 624, 628 (9th Cir. 2018). However, courts have held that while

25  1.5 months may provide circumstantial evidence, three and four months is too long.[4] *Id.*

26  ─────────────
[3] At oral argument, Mr. Losa's counsel asserted that the temporal link between Mr. Losa's
27  complaint and the development plan was one month. This is contradicted by Mr. Losa's
response brief, however, which states that the temporal link was eight months. (Doc. 50 at
6.)
28  [4] Mr. Losa relies on *Diederich v. Providence Health & Servs.*, 622 F. App'x 613, 614 (9th
Cir. 2015), which he said "held that a 7 month gap established a causal link." (Doc. 50 at

1  Mr. Losa has not stated a prima facie case of retaliation for this additional reason.

2  ## 2. Legitimate, Non-Retaliatory Justification

3  Even if Mr. Losa had established a prima facie case, the burden would shift to SRP

4  to demonstrate a legitimate, non-retaliatory justification for its actions. *Manatt*, 339 F.3d

5  at 800. With respect to the position reassignments, SRP asserts that it "makes corporate

6  reorganizations from time to time to meet its current business needs and improve

7  efficiency." (Doc. 48 at 7 ¶ 39.) SRP also states that during the time period at issue, it

8  underwent multiple reorganizations that did not involve Mr. Losa or his work group. (*Id.*)

9  Further, each time Mr. Losa was reassigned, multiple other engineers were, as well. (*Id*. at

10  2 ¶ 9; 3 ¶ 15, 4 ¶ 20; 5 ¶ 26.) With respect to the development plan, SRP contends that it

11  was designed to "improve his communications and interactions with the other engineers

12  within his work group."  (Doc. 48 at 6-7 ¶ 36.) The Court finds these to be legitimate, non-

13  retaliatory justifications for SRP's actions with respect to Mr. Losa.

14  ## 3. Pretext

15  Accordingly, Mr. Losa may defeat summary judgment only if he can "produce

16  evidence to show that the stated reasons were a pretext for retaliation." *Manatt*, 339 F.3d

17  at 800. A plaintiff may use either direct or circumstantial evidence to meet this burden.

18  Direct evidence is evidence "which, if believed, proves the fact [of discriminatory animus]

19  without inference or presumption." *Coghlan v. Am. Seafoods Co. LLC*., 413 F.3d 1090,

20  1095 (9th Cir. 2005) (citation omitted). Circumstantial evidence "requires an additional

21  inferential step to demonstrate discrimination." *Id.* at 1095. A plaintiff need only offer

22  "very little" direct evidence; when a plaintiff relies on circumstantial evidence, however,

23  it must be "specific and substantial" to defeat an employer's motion for summary

24  judgment. *Id.*

25  Because Mr. Losa has not demonstrated direct evidence of discriminatory animus,

26  he must provide substantial circumstantial evidence. The Court finds that he has not done

27  _____

28  6.) *Diederich* made no such finding. It stated that after the plaintiff's employer learned about a lawsuit he filed in December 2007, a "series of adverse actions" began against him in January 2008 (one month later), and culminated with his termination in September 2008. *Diederich* does not support Mr. Losa's argument.

1   so. Mr. Losa asserts, without support, that his job rotation was "cover for Contreras's plan

2   to get rid" of him. (Doc. 50 at 7.)  He also disputes this his reassignments were "rotations,"

3   and instead characterizes them as "demotions," but does not otherwise dispute that SRP

4   occasionally makes corporate reorganizations, or that multiple reorganizations occurred

5   during the relevant period that did not involve him. (Doc. 51 at 2 ¶ 15; 3 ¶ 26; 5 at ¶ 39.)

6   Mr. Losa also states that the development plan was retaliatory because he could have been

7   fired for not improving. (Doc. 51 at 5 ¶ 36.) The Court does not find this to be compelling

8   circumstantial evidence to conclude that SRP's stated justifications were pretext for

9   retaliation.

10         For all of the foregoing reasons, the Court will grant summary judgment to SRP on

11   Mr. Losa's retaliation claims (Counts Two and Three).

12         **B.    Hostile Work Environment**

13         Mr. Losa also brings two claims of hostile work environment based on his physical

14   and verbal interactions with Mr. McIntire and his near-accident with Mr. Contreras (Counts

15   Four and Five).[5] (Doc. 50 at 4.) A plaintiff asserting a hostile work environment claim

16   under § 1981 must establish a prima facie case that "(1) the defendants subjected [him] to

17   verbal or physical conduct based on [his] race; (2) the conduct was unwelcome; and (3) the

18   conduct was sufficiently severe or pervasive to alter the conditions of employment and

19   create an abusive working environment." *Surrell v. California Water Serv. Co*., 518 F.3d

20   1097, 1108 (9th Cir. 2008). SRP moves for summary judgment on grounds that the alleged

21   conduct falls short of a hostile work environment as a matter of law. The Court agrees. Mr.

22   Losa has not established at least the first and third elements of a prima facie case for hostile

23   work environment under § 1981.

24         **1.    Conduct Based on Race**

25         First, Mr. Losa has not demonstrated that he was subjected to verbal or physical

26   conduct based on his race.[6] Mr. Losa ties Mr. McIntire's conduct to discrimination because

27   _____

     [5] Although his First Amended Complaint does not describe the specific bases for Counts
28   Four and Five, or differentiate them in any way, Mr. Losa asserts in his response that the
     claims are based on his interactions with Mr. McIntire and Mr. Contreras.
     [6] At oral argument, Mr. Losa's counsel relied on *Brooks v. City of San Mateo*, 229 F.3d

1    Mr. McIntire spoke to him "in a loud voice like no others to discredit him as if Filipinos

2    are unintelligent." (Doc. 50 at 4; Doc. 49 at 6 ¶ 34; Doc. 51 at 4 ¶ 34.) SRP asserts that Mr.

3    McIntire's "general personality and way of interacting with others is outgoing and loud."

4    (Doc. 48 at 5 ¶ 31.) Mr. Losa objects to this statement as "irrelevant." (Doc. 51 at 4 ¶ 31.)

5    The Court disagrees. The assertion that Mr. McIntire is generally loud discredits Mr. Losa's

6    argument. (Doc. 50 at 4.) *See Surrell*, 518 F.3d at 1109 (a court should consider "all the

7    circumstances" in resolving § 1981 claims).  Further, § 1981 is "not a 'general civility

8    code.'" *Manatt*, 339 F.3d at 798 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787

9    (1998)). Even assuming that Mr. McIntire spoke loudly to him, Mr. Losa has not

10   demonstrated that Mr. McIntire's conduct was based on his race.

11           With respect to Mr. Contreras, Mr. Losa asserts that he made a derogatory comment

12   about Filipinos eating dog meat in 2012. (Doc. 50 at 4; Doc. 51 at 3 ¶ 24.) Therefore, Mr.

13   Losa argues, the near-accident in 2018 was tied to his race. The alleged dog meat comment

14   is outside the four-year statute of limitations for § 1981 claims. (Doc. 48 at 3 ¶ 18; Doc. 51

15   at 3 ¶ 18). Even if the Court considers it, however, this comment is not sufficient. Offensive

16   comments and isolated incidents, unless "extremely serious," are insufficient for hostile

17   work environment purposes. *Manatt*, 339 F.3d at 798. A reasonable finder of fact could

18   not conclude that Mr. Contreras purposefully tried to hit Mr. Losa with his vehicle because

19   of his race. Mr. Losa has accordingly failed to state a prima facie case for hostile work

20   environment.

21                   **2.      Sufficiently Severe or Pervasive**

22           Mr. Losa has also not demonstrated that the conduct at issue was "sufficiently severe

23   or pervasive." *Surrell*, 518 F.3d at 1108. To meet this requirement, a plaintiff must

24   demonstrate that the workplace was "both objectively and subjectively offensive, one that

25   a reasonable person would find hostile or abusive, and one that the victim in fact did

26   perceive to be so." *Faragher*, 524 U.S. at 787. Allegations of a racially hostile workplace

27   ─────────────────────
     917, 921 (9th Cir. 2000) for the point that one incident can be sufficient to establish a
28   hostile work environment. Mr. Losa's response brief did not cite this case. Nonetheless,
     the Court finds that the sexual harassment at issue in *Brooks* is readily distinguishable from
     the conduct alleged in this case.

"must be assessed from the perspective of a reasonable person belonging to the racial . . . group of the plaintiff." *Surrell*, 518 F.3d at 1108.

Mr. Losa does not meet this requirement. The "required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000) (citations omitted). The limited instances at issue not rise to the level of "severe" or "pervasive," even if Mr. Losa felt uncomfortable as a result. *See Manatt*, 339 F.3d at 799 (9th Cir. 2003) ("[T]hese two regrettable incidents occurring over a span of two-and-a-half years, coupled with the other offhand remarks made by [plaintiff's] co-workers and supervisor, did not alter the conditions of [plaintiff's] employment. Her hostile work environment claim must fail.").

Mr. Losa argues in response that the relevant inquiry is whether the work environment was "objectively hostile to a naturalized Filipino, Losa's ethnic group, not an American born citizen." (Doc. 50 at 5.) SRP disputes this, noting that although courts should generally "focus on the perspective of the victim," Ninth Circuit case law does not take into account particular characteristics such as these. (Doc. 53 at 2 (citing *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)). The Court need not address this dispute, however; whether considered from the perspective of a naturalized Filipino or an American-born citizen, the conduct at issue does not rise to the requisite level of sufficiently severe or pervasive. Mr. Losa has also failed to establish a prima facie case of racial harassment for this reason.

### 3.    Remedial Action

Further, even if a plaintiff can state a prima facie case, an employer is liable only if it was aware of the harassment and failed to act in a way "reasonably calculated to end the harassment." *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 875 (9th Cir. 2001). Summary judgment is also warranted for this reason. SRP asserts that after Mr. Losa complained about Mr. McIntire, "SRP took action by meeting with Mr. McIntire and asking him to change how he interacted with Mr. Losa. Mr. McIntire agreed to change; the

- 11 -

1    conduct about which Mr. Losa complained stopped, and Mr. Losa made no further

2    complaints about Mr. McIntire." (Doc. 48 at 6 ¶ 3.) Mr. Losa responds that SRP "did not

3    take meaningful action"; that there is "no documentation" that Mr. McIntire was

4    investigated or counseled; that Mr. McIntire was not disciplined; and that the matter was

5    not resolved because Mr. McIntire "avoided" Mr. Losa. (Doc. 51 at 4 ¶ 35.) Mr. Losa does

6    not dispute that a meeting occurred, that the conduct at issue ceased, or that he never

7    complained about Mr. McIntire again. As to his assertion about "written" evidence, Mr.

8    Losa has not cited authority requiring as much, and the Court has not located any.

9         Mr. Losa also argues that Mr. McIntire "should have been fired" according to SRP's

10   Positive Discipline policy. (Doc. 50 at 5.) That policy states that the recommended action

11   for "[f]ighting or disorderly conduct on SRP premises" is discharge. (*Id*.) Mr. Losa further

12   states that Senior Human Resources Representative Patty Gomez "admitted" in her

13   deposition that Mr. McIntire could be fired for disorderly conduct. The record contains no

14   such admission, however. Ms. Gomez did state, "the policy says if you're disorderly that

15   could be grounds for discharge." (Doc. 51-3 at 20.) Ms. Gomez also stated that if,

16   hypothetically, Mr. Contreras reported that Mr. McIntire had grabbed him, "HR would

17   want more information, they would investigate that." (*Id*.) These statements do not

18   constitute an admission that Mr. McIntire should have been fired for the conduct at issue.

19   The Court therefore concludes that, even if Mr. McIntire's conduct was considered

20   harassment, SRP acted in a way "reasonably calculated to end" it. *Nichols*, 256 F.3d at 875.

21        Further, with respect to Mr. Contreras, Mr. Losa argues that SRP failed to discipline

22   him "or to send him to diversity training." (*Id*.) However, SRP asserts that Mr. Losa

23   reported the incident to his manager, who then spoke with Mr. Contreras and reminded him

24   to be cautious while driving in the parking lot. (Doc. 48 at 8 ¶ 41.) Mr. Losa disputes this

25   only to the extent that he "complained that the accident was intentional." (Doc. 51 at 5 ¶¶

26   41, 42.) In the hostile workplace context, employers' remedies should be "assessed

27   proportionately to the seriousness of the offense." *Ellison v. Brady*, 924 F.2d 872, 882 (9th

28   Cir. 1991) (citation omitted). Based on the facts presented—Mr. Contreras's alleged

comment in 2012, followed by a near-accident in 2018—Mr. Losa has not presented a genuine issue for trial that SRP failed to act reasonably with respect to Mr. Contreras, either. *Nichols*, 256 F.3d at 875.

The Court will accordingly grant summary judgment to SRP on Mr. Losa's hostile work environment claims (Counts Four and Five).

**VI.   CONCLUSION**

Accordingly,

**IT IS ORDERED** granting SRP's Motion for Summary Judgment. (Doc. 47.) The Clerk of the Court shall enter judgment in SRP's favor on all of Plaintiff's remaining claims and close this case.

Dated this 1st day of July, 2020.

Michael T. Liburdi
United States District Judge